IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION
CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 15 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

| | |
|---|---|
| BRENDA W. CALDWELL, Plaintiff, | ) ) ) |
| v. | ) Case No. 7:04-CV-00442 ) |
| JOANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, Defendant. | ) By: Hon. Michael F. Urbanski ) United States Magistrate Judge ) ) |

## MEMORANDUM OPINION

Plaintiff Brenda W. Caldwell brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") and Social Security Income ("SSI") under Title II and XIV of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. Having reviewed the record and after briefing and oral argument, it is recommended that the Commissioner's motion for summary judgment be granted as the Commissioner's decision is supported by substantial evidence and proper under the law.

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is a substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## FACTUAL AND ADMINISTRATIVE HISTORY

Plaintiff was born in 1958 and finished the eleventh grade. (Administrative Record, hereinafter "R.," at 70, 114.) She has past work experience as a snack bar tender, a housekeeper, and as a hospital laundry worker. (R. 451, 473-74) Plaintiff was fired by her last employer on January 4, 2001 due to excessive absenteeism caused by dizziness and fatigue. (R. 447) Plaintiff filed her current applications for SSI and DIB on April 16, 2001, alleging that she was disabled as of January 1, 2001 due to epilepsy, diabetes, and "heart troubles." (R. 70-72, 426-30) Plaintiff's claims were denied at the initial and reconsideration levels of review, and a hearing was held before an administrative law judge ("ALJ") on September 26, 2002. (R. 21-29, 31-34, 432-33) On July 2, 2003, the Appeals Council remanded the case for a new decision because the recording of the prior hearing could not be located. (R. 57-58)

Following a second administrative hearing on November 21, 2003, the ALJ issued a decision in which he found that despite plaintiff's limitations, she was able to perform a significant number of jobs in the national economy and was not disabled. (R. 8-20) On July 9, 2004, the ALJ's decision became final when Appeals Council denied plaintiff's request for review. (R. 5-7) Plaintiff then filed this case seeking review under 42 U.S.C. § 405(g).

In January 2001, notes from the Bradley Free Clinic revealed plaintiff's seizure disorder was described as being "well-controlled." (R. 281) In March 2001, plaintiff was admitted to the hospital for acute pancreatitis. (R. 214) Following her discharge in April 2001, plaintiff's treating physician notes that plaintiff had no further abdominal discomfort. (R. 282) In May 2001, plaintiff was diagnosed by the Bradley Free Clinic with insulin-dependant diabetes mellitus. (R. 280)

2

In August 2001, plaintiff sought treatment for headaches and left-side numbness, and a CT-scan was consistent with a transient ischemic attack. (R. 190-278) Notes indicate that although plaintiff had a seizure disorder, she had "no problem" when compliant with medication. (R. 266) In December 2001, plaintiff's diabetes was "poorly controlled" and her Humulin dosage was increased. (R. 261) In February 2002, plaintiff's vision had improved and she was feeling "good" and "less tired." (R. 256)

In March 2002, plaintiff sought hospital treatment for right knee pain. (R. 300) After fluid was aspirated from the joint, notes indicate that plaintiff felt much better. (R. 300)

In April 2002, plaintiff was examined by Hetzal Hartley, M.D., at the Agency's request. (R. 304-09) Plaintiff stated that she was able to independently cook, do laundry, clean her house, and shop. (R. 304) There was no evidence of focal motor atrophy in her extremities, and plaintiff had a full range of motion in her hands, wrists, elbows, and shoulders. (R. 306) She used suboptimal effort on a grip test. (R. 300) Dr. Hartley noted that although plaintiff had wide fluctuations in her visual acuity, her physical examination and the activities she had noted regarding her daily living were consistent with a capacity for performing light and sedentary work. (R. 307) He noted that she should avoid hazardous machinery due to the possibility of hypoglycemic attacks. (R. 307)

In May 2002, coronary artery testing revealed no diagnostic changes and no ischemic chest discomfort. (R. 373-76, 391-92, 395-400) In June 2002, plaintiff sought emergency room treatment for a seizure. (R. 312-13) However, a CT-scan of plaintiff's head was negative and the findings were compatible with inflammatory sinus disease. (R. 321, 312-33) Plaintiff sought emergency treatment in July 2002 with complaints of pain in her arms and legs. (R. 334-37) The diagnosis was muscle strain. Id.

3

From May through August 2003, plaintiff was treated at the Carilion Memorial Hospital and the Bradley Free Clinic for her diabetes. (R. 377-89) Treatment notes indicate ongoing use of insulin for diabetic sugar control and reasonably good control of seizures with oral medication. (R. 401-05)

In June 2001, a state agency physician completed a residual functional capacity assessment in which he found that plaintiff could lift ten pounds frequently and twenty pounds occasionally; could stand or walk at least two hours out of an eight-hour day; could sit for six hours in an eight-hour day; could never climb or balance; and needed to avoid hazards. (R. 284-91)

At the administrative hearing, plaintiff testified that she read a romance novel a month and watched many television programs. (R. 468-69) She stated that she did a variety of housework including cleaning and washing clothes. (R. 468)

At the hearing, the ALJ asked the vocational expert ("VE") a hypothetical question, specifically whether there were any jobs in the national economy that an individual could perform given the age, education, and work experience of plaintiff, and who could perform unskilled sedentary work subject to a sit/stand option; where the person could avoid hazardous heights and moving machinery; where they could avoid climbing, balancing, and walking on uneven surfaces and no more than occasionally have to push or pull with their right knee; and where the person could avoid all tasks requiring fine visual acuity. (R. 475) In response, the VE testified that plaintiff could perform a significant number of jobs in the national economy including those of assembler and hand packer. (R. 477) Based on a review of the record, the ALJ concluded that plaintiff could still perform a number of jobs in the national economy and was therefore not disabled. (R. 19)

4

# ANALYSIS

Plaintiff's argues that the ALJ's determination that plaintiff is not disabled is not supported by substantial evidence. Specifically, plaintiff contends that as medical records support plaintiff's subjective complaints of fatigue, pain, and being unable to use her hands, the ALJ erred in failing to include in the hypothetical plaintiff's need to walk around after sitting, plaintiff's need to elevate her legs due to swelling, and plaintiff's inability to use her hands for repetitive activities. (Pl. Mem. Supp. Summ. J. at 2)

### a. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Having evaluated all of the evidence in the record, the ALJ concluded that plaintiff was able to perform a modified range of sedentary work. Plaintiff contends that she is unable to use her hands for repetitive activities and that she needs to elevate her legs at times due to swelling and to walk around after sitting.

Here, substantial evidence supports that plaintiff had only moderate limitations in functioning. The ALJ noted that plaintiff had functional limitations resulting from joint disease, diabetic complications, and obesity, and that these impairments reduced her ability to work to less than the full range of sedentary exertional activity. (R. 14)

However, the ALJ also noted that plaintiff's limitations do not prevent her from performing a modified range of sedentary activity, given that she has achieved a degree of control over her diabetes through weight loss, diet, the use of insulin and lifestyle changes; that she has begun to wear glasses giving her better visual acuity; and that medications have better controlled her hypertension, reflux, seizures, and migraines. It is clear from the case law that where conditions are treatable through the use of medication or other means, parties cannot use their existence to receive benefits. See Houston v. Sec'y of Health & Human Servs., 736 F.2d 365,

5

367 (6th Cir. 1984); Schmidt v. Barnhart, 2005 U.S. App. LEXIS 674 at **19-20 (7th Cir. Jan. 14, 2005); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")

Next, no physician has ever stated that plaintiff could not perform a modified range of sedentary work. A lack of physical restrictions from a treating source tends against a finding of total disability. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999). Supporting this, the consultative physician, Dr. Hartley, noted that although plaintiff had fluctuations in her ability to see, her physical examination and her activities of daily living were consistent with a capacity for performing light or sedentary work. (R. 307) The regulations provide that a physician's opinion regarding such matters is entitled to controlling weight where it is well-supported by medically acceptable clinical or diagnostic techniques and is consistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527, 416.927(d)(2). Dr. Hartley's examination notes that there was no evidence of focal motor atrophy in plaintiff's extremities, and that she had a full range of motion in her hands, wrists, elbows, and shoulders. (R. 306)

Dr Hartley's opinion is consistent with the remainder of evidence in the medical record. Notes from the Bradley Free Clinic reveal that plaintiff's seizure disorder was well-controlled. (R. 281) Following plaintiff's discharge from the hospital in April 2001, plaintiff's treating physician noted that she had no further abdominal discomfort since discharge. (R. 282) Notes reveal that in September 2001, though plaintiff suffered from a seizure disorder, she had "no problem" when compliant with medication. As such, plaintiff's seizure disorder cannot be considered disabling. See Roth, 45 F.3d at 282. In February 2002, plaintiff's vision had improved and she was reportedly feeling "good" and "less tired." (R. 256) Although in June 2002 plaintiff sought emergency room treatment for a seizure, a CT-scan of plaintiff's head was

6

negative and the findings were consistent with an inflammatory sinus disease. (R. 321, 312-33) Although plaintiff sought emergency treatment in July 2002, when she was seen in the emergency room complaining of pain in her arms and legs, she was diagnosed with muscle strain and not some more serious condition. (R. 334-37) Treatment notes in May to August 2003 indicate that plaintiff was able to control her diabetes through insulin and had success with the use of oral medication at controlling her seizures. Again, conditions that are successfully treated cannot form the basis of disabling impairments.

Additionally, the ALJ specifically considered the remainder of plaintiff's subjective complaints but found that they were inconsistent with the remainder of the material in the medical record. Under Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996), the ALJ must first determine, through the examination of the objective medical record, whether the claimant has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. In doing so, the ALJ must determine whether the claimant's statements about her symptoms are credible in light of the entire record. (R. 594-95) Here, the ALJ determined that plaintiff had medical conditions that could cause the symptoms alleged, but that plaintiff's symptoms were not so severe as to prevent her from performing the exertional requirements of a modified range of sedentary work.

Particularly, the ALJ discounted plaintiff's subjective complaints because they were inconsistent with the medical record. In April and August 2001, the state agency physicians completed an assessment of plaintiff's residual functional capacity. (R. 284-91) Their assessments indicated that plaintiff was capable of performing a modified range of sedentary work under the Act. The regulations direct the Commissioner to accord weight to the testimony

7

consistent with the objective medical evidence underlying such opinions. See 20 C.F.R. 416.927(a)-(e); 20 C.F.R. 404.1527(a)-(e).

The court's review of the medical record compels the conclusion that there was a paucity of evidence in the medical record supporting the conclusion that plaintiff's subjective complaints constituted disabling impairments, and as such, the ALJ acted properly in according the weight to the state agency physicians that he did. The ALJ correctly noted that there is no indication in the medical record that plaintiff must take a nap in the afternoon or that she has spoken with any doctor regarding her need to elevate her legs to reduce swelling. (R. 304) Plaintiff's failure to seek treatment is something which the ALJ is permitted to take into account. Accord Stewart v. Apfel, 1999 U.S. App. LEXIS 15685, at **15-16 (4th Cir., July 12, 1999) (ALJ was permitted to examine a claimant's failure to get counseling in making their disability determination). Additionally, plaintiff's reporting of her own daily activities indicates that she could perform a modified range of sedentary work. Plaintiff testified that she did many forms of housework and read romance novels. (R. 468)

      **b.**    **The ALJ's Conclusion that there are a Significant Number of Jobs in the National Economy Plaintiff Can Perform**

Plaintiff claims that the hypothetical question posed by the ALJ to the VE failed to include some necessary limitations including that the plaintiff needed to walk around after sitting, the plaintiff needed to elevate her legs due to swelling, and could not use her hands for repetitive activities due to pain and swelling.

At the administrative hearing, after the VE testified in response to the hypothetical as to jobs available in the national economy, the VE was questioned by Caldwell's counsel about the impact on the occupational base of certain limitations testified to by plaintiff. Specifically, the

8

VE was asked about the impact of plaintiff's claimed need to elevate her legs for fifteen minutes two to three times a day; her need to move about and to lie down for two or three hours during the work day. (R. 477-480) In response, the VE testified that these limitations would erode the occupational base. Further, the VE was asked about the occupational impact of swelling in plaintiff's hands, which plaintiff testified occurred at least a couple of times a day and interfered with her ability to use her hands. The VE testified that such a limitation would have a profound impact on her ability to perform an assembler or hand packer job. (R. 481)

This argument, however, is entirely predicated on claimant's testimony at the administrative hearing which the ALJ found to be only partially credible. The ALJ reasoned:

> Some of the claimant's allegations appear exaggerated and unsupported by the medical record. For example, she stated that she must nap during the afternoon and must elevate her legs to reduce swelling. Neither allegation receives any support in the medical notes.

(R. 16)

Plaintiff's argument – that the VE's testimony be based entirely on the testimony of a claimant – is in conflict with the Fourth Circuit's holding in Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989), where the court held that "the opinion of a vocational expert must be based on more than just the claimant's testimony – it should be based on claimant's condition as gleaned from the entire record."

Plaintiff counters that several doctors have noted that she suffered from swelling in her hands, legs, and feet. Plaintiff points to three places in the record as evidence of this position. A medical record dated March 19, 2002 from the Bradley Free Clinic states that plaintiff suffered from some swelling in her knee. (R. 254) Medical records from Roanoke Memorial Hospital state that she was also experiencing similar symptoms on March 2, 2002. (R. 300) Although

9

plaintiff notes to Dr. Hartley during the course of his examination of her that she experiences pain in her knees, he does not indicate that there is any swelling. (R. 307) While some swelling is reflected in the record, it is well-established that a mere diagnosis of a condition is not enough to prove disability. See Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986); Wagner v. Apfel, 1999 U.S. App. LEXIS (4th Cir. Nov. 16, 1999). There are no medical opinions supporting the magnitude of the impairments plaintiff claims. Indeed, Dr. Hartley's examination of plaintiff revealed that plaintiff had a full range of motion in her hands, wrists, elbows, and shoulders. (R. 306)

It is clear that the ALJ followed the strictures of Walker v. Bowen and considered the entire record. Indeed, it appears that the ALJ took plaintiff's limitations into consideration as the residual functional capacity contained a number of limitations, including a sit/stand option; avoidance of hazardous heights and moving machinery; avoidance of climbing, balancing, and walking on uneven surfaces; only occasional pushing/pulling with her right knee; and avoidance of all tasks requiring fine visual acuity. (R. 475) The court's review of the record compels the conclusion that the ALJ's decision is supported by substantial evidence. See Hays v. Sullivan; 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that if substantial evidence exists supporting the Commissioner's decision, it must be affirmed).

## CONCLUSION

Given the deferential standard of review provided under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ as there is more than enough evidence to support the conclusion that plaintiff was not disabled as defined under the Social Security Act. See Pierce v. Underwood, 407 U.S. 552, 565 (1988); King v. Califano, 559 F.2d 597, 599 (4th Cir. 1979). As such, defendant's motion for summary judgment is granted.

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the subjective factors in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. An order dismissing this action will be entered.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

Enter this 15th day of June, 2005.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge